DuQUOIN STATE BANK, Plaintiff-Appellee, v. NORRIS CITY STATE BANK, Defendant-Appellant.

Fifth District   No. 5—90—0369

Opinion filed June 26, 1992.

James L. Van Winkle, of Van Winkle & Van Winkle, of McLeansboro, for appellant.

Michael F. Dahlen and Paul G. Schoen, both of Feirich/Schoen/Mager/Green, of Carbondale, for appellee.

PRESIDING JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Norris City State Bank, appeals from a judgment of the circuit court of Perry County in favor of plaintiff, DuQuoin State Bank, finding that defendant, in the course of its business, negligently supplied false information to plaintiff, and as a result of defendant's actions, plaintiff made an unsecured loan on which the borrower defaulted. We affirm.

In this appeal, defendant contends that: (1) the trial court erred in holding that defendant owed a duty to plaintiff; (2) the trial court's holding that defendant supplied information to plaintiff in the course of defendant's business was against the manifest weight of the evidence; (3) the trial court's holding that defendant negligently supplied false information to plaintiff was against the manifest weight of the evidence; and (4) the trial court erred in failing to consider plaintiff's negligence and to reduce plaintiff's award accordingly.

In August 1987, plaintiff filed an action against defendant based upon a theory of negligent misrepresentation. Plaintiff alleged that in

the normal course of its business and in order to induce plaintiff to loan $25,000 to DeVoe Brothers, Inc. (DeVoe Brothers), defendant represented to plaintiff that DeVoe Brothers owned certain real estate on which defendant held a mortgage, and that defendant would subordinate its mortgage to plaintiff. Plaintiff also alleged that it was part of defendant's business to provide information to other commercial banks, including plaintiff, to secure financing for defendant's customers.

The events leading up to this lawsuit were adduced at a bench trial as follows. In April, May and June of 1986, Lawrence Luecking, a vice-president of plaintiff, was approached by Hollis DeVoe (DeVoe) regarding a business loan for DeVoe's coal reclamation project in Valier. Plaintiff denied DeVoe's first request for $110,000 for lack of security, inability to repay and insufficient business experience. After several more attempts without success, DeVoe requested a $25,000 loan to meet his payroll in June 1986. Again, plaintiff declined to make the loan. During this same time period, DeVoe Brothers, owned by Hollis DeVoe and his two sons, was negotiating to purchase Utility Coal Corporation (Utility), a coal-reclamation operation in Williamson County. DeVoe Brothers originally intended a stock purchase of Utility, but after undisclosed debts surfaced, DeVoe Brothers considered an asset purchase. Utility owned approximately 150 acres of coal-reclamation land in Williamson County. In 1984, defendant made a $300,000 loan to Utility, secured by a first mortgage on the 150 acres. The loan was also secured by a Small Business Administration (SBA) guarantee for 90% of the loan.

In July 1986, when the deal between DeVoe Brothers and Utility faltered, DeVoe contacted H. Bruce Burnett, then chairman of the board of defendant, requesting a $25,000 loan. Although defendant presented evidence that Burnett retired from this position on June 21, 1986, prior to DeVoe's loan request, Burnett testified that he still held himself out to be chairman of the board until August 1, 1986. Burnett continued to use a room at the bank and utilized the services of bank employees, and the letterhead continued to show him as chairman until August 1, 1986.

Burnett instructed DeVoe that defendant would not make the loan because several loans Utility had with defendant were in default. Burnett advised DeVoe to return to plaintiff, where DeVoe maintained deposits. DeVoe thereafter informed Burnett that he had obtained a pledge of retraining funds (hereinafter HITS funds) from John A. Logan College (Logan College) and requested help in securing the loan for the $25,000 he needed to stay in operation. On July 28, 1986, in

response to DeVoe's plea, Burnett called Michael Travelstead, president of plaintiff and longtime banking associate, to discuss a possible loan by plaintiff to DeVoe. Burnett explained to Travelstead that DeVoe Brothers was in the process of purchasing Utility and was currently operating that project, but the deal had not yet closed. Burnett further explained that DeVoe urgently needed a $25,000 loan to make payroll that week so the operation could continue. In order to convince Travelstead to approve the loan, Burnett offered to subordinate defendant's mortgage on the Utility property, thereby enabling plaintiff to acquire a first mortgage position as collateral, contingent upon SBA approval. Additionally, Burnett offered to personally guarantee $10,000 of the loan. There was also some discussion about the HITS funds from Logan College as a method of repayment and whether such funds were assignable to plaintiff. At the end of the conversation, Travelstead told Burnett he would look at the file and call back, fully understanding the urgency of the matter. Later that same day, Travelstead called Burnett and stated that plaintiff would make the loan so that DeVoe's payroll could be made that week. Travelstead further stated that without Burnett's involvement there was no way plaintiff would have approved the loan, but if the mortgage defendant held on Utility land was subordinated it was unnecessary for Burnett to personally guarantee any part of the loan. Travelstead also commented that plaintiff would attempt to have the Logan College HITS funds assigned to it. Burnett repeated that the subordination was contingent upon SBA approval and that he would attempt to gain such approval as soon as possible. After that conversation, Travelstead instructed Luecking to process the loan, and Burnett wrote to SBA requesting approval of the mortgage subordination. Burnett also wrote a letter to Travelstead confirming the subordination agreement and attached a copy of defendant's mortgage, the title insurance policy on the property, and a copy of the letter to SBA. Travelstead recalled receiving the letter, but did not recall seeing the supporting documents.

The next day, July 29, 1986, Burnett received verbal approval from SBA to subordinate defendant's mortgage and allow plaintiff to acquire the first mortgage position. Written confirmation was received on July 30, 1986. Luecking prepared plaintiff's mortgage from the mortgage documents received from Burnett but did not remember seeing the title policy. The mortgage documents sent from defendant indicated Utility as the owner of the property, but Travelstead testified that he never saw any of the documents. Luecking and Travelstead spoke no further about the loan, and Luecking instructed his secretary to prepare the note and mortgage. The funds were dis-

bursed July 30, 1986. Luecking testified that when he did notice the title to the real estate was in the name of Utility he asked DeVoe about it, and DeVoe stated that he owned the property or that he was in the process of buying it. That statement was supported by earlier statements made by Burnett to Travelstead. Therefore, Luecking was under the impression that the mortgaged property was owned or being bought by DeVoe Brothers, and that plaintiff would receive additional documentation from defendant to facilitate the mortgage subordination.

After the loan was made, Luecking prepared paperwork to reflect reassignment of the Logan College HITS funds. Sometime after August 30, 1986, Luecking told Travelstead he was having some difficulty obtaining the HITS funds. A representative from Logan College indicated that the checks had to be made payable to Guarantee Resources, Inc. (Guarantee), a company wholly owned by DeVoe Brothers. Around the first of October 1986, Luecking received a letter from Logan College stating that the college board had to approve the reassignment of the HITS funds to plaintiff, that approval was expected to come on October 8, 1986, and that the checks would then be sent to plaintiff. The first HITS funds check was issued on October 17, 1986, but it was mailed to Guarantee. After receiving the check, DeVoe spent it rather than applying it to plaintiff's loan. Four to six weeks after the first loan payment was due, DeVoe sent a letter to Luecking, stating he knew it was wrong for him to spend the money, but he needed the funds to continue operations. On the same day Luecking received DeVoe's letter, Luecking's supervisor, Tony Elder, wrote DeVoe to notify him that plaintiff was accelerating the loan. On November 30, 1986, Logan College confirmed with Guarantee that the HITS funds would be paid to plaintiff under the July 28, 1986, assignment, and the second HITS funds check was issued on January 23, 1987, and sent to plaintiff. That was the only payment plaintiff received on the loan. Further, since the real estate on which plaintiff held the mortgage was owned by Utility and not DeVoe, the loan was, in fact, unsecured. Therefore, plaintiff held no collateral which it could apply toward the delinquent loan.

The trial court held that defendant, by and through its agent, Bruce Burnett, negligently supplied false information to plaintiff through the course of defendant's banking business. As a result of being negligently supplied with this false information, plaintiff made an unsecured loan to DeVoe Brothers, which is in default. The trial court found that plaintiff was damaged in the amount of $21,106.29. The trial court also held that plaintiff was negligent in supervising the col-

lection of HITS funds from Logan College which were assigned to plaintiff by Guarantee and DeVoe Brothers, so defendant is entitled to a setoff in the amount of $6,940 for funds not collected by plaintiff but due plaintiff. The trial court ordered that plaintiff be awarded judgment against defendant in the sum of $14,166.29 plus costs of suit.

Defendant contends that the trial court erred in holding that defendant owed a duty to plaintiff, and if such a duty does exist, defendant did not breach it. In its second amended complaint, plaintiff alleged that defendant negligently misrepresented the state of title to certain real estate, and as a result, plaintiff took a mortgage from DeVoe Brothers on land titled to Utility.

■ The Illinois courts have recognized the tort of negligent misrepresentation. One of the first cases to address this tort was *Guaranty Bank & Trust Co. v. Reyna* (1964), 51 Ill. App. 2d 412, 201 N.E.2d 144. In *Guaranty Bank*, the plaintiff inquired whether an individual with whom she had negotiated a lease was the bank's agent. The defendant bank stated in a letter that the person in question was not empowered to act as the bank's agent. Based on this information, the plaintiff repudiated her lease. The person with whom the plaintiff negotiated the lease was, however, a duly authorized agent of the bank. The court held:

> "The information supplied by the bank was in the course of its business in response to an inquiry by Miss Reyna. The information was supplied to guide Miss Reyna in the conduct of a serious business matter. It was intended that Miss Reyna should rely upon such information for the purpose of ascertaining parties for a law suit. Miss Reyna relied upon the information to repudiate her obligations under a lease into which she was told she had never validly entered. *** The conclusion which Miss Reyna drew was an inference implicit in the bank's answer. We believe that Miss Reyna was entitled to rely upon the bank's representations." (51 Ill. App. 2d at 422-23, 201 N.E.2d at 150.)

Our supreme court recognized the tort of negligent misrepresentation in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, 250 N.E.2d 656. Although *Rozny* did not address the "business of supplying information" requirement, the court did approve the reasoning found in the Restatement (Second) of Torts §552 (then in draft form). Section 552 provided the basis of the "business of providing information" requirement:

"(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." Restatement (Second) of Torts §552(1) (1977).

■ Applying the tort to stockbrokers, the court in *Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1979), 68 Ill. App. 3d 75, 385 N.E.2d 376, construed section 552 as meaning "[i]f it is one's business to supply information and if that information is negligently supplied *** the supplier can be held liable for the resultant damages." (68 Ill. App. 3d at 81, 385 N.E.2d at 381.) This construction was followed in *National Can Corp. v. Whittaker Corp.* (N.D. Ill. 1981), 505 F. Supp. 147. In *National Can*, the plaintiff, a bottle cap manufacturer, sued a supplier of compounds used in manufacturing the caps based on negligent misrepresentation concerning the fitness of the compounds. The court held that the tort of negligent misrepresentation "has been recognized almost exclusively in situations where information was supplied that damaged a plaintiff in its relations with *third parties.*" (Emphasis in original.) (505 F. Supp. at 150.) Our supreme court confirmed the interpretations espoused by *Penrod* and *National Can* in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443, by specifically limiting the recovery of economic losses in negligent misrepresentation actions to circumstances in which "one who is in the business of supplying information for the guidance of others in a business transaction makes negligent misrepresentations." *Moorman*, 91 Ill. 2d at 89, 435 N.E.2d at 452.

There has been no definitive analysis in the Illinois cases to date as to what principle should be applied in determining whether a party is "in the business of supplying information." There are cases in which courts held that the defendants were not in the business of supplying information when the defendant was a developer, a builder/owner of an apartment building, a precipitator manufacturer, a manufacturer of roofing materials, a computer manufacturer and a computer software manufacturer. (*Anderson Electric, Inc. v. Ledbetter Erection Corp.* (1986), 115 Ill. 2d 146, 503 N.E.2d 246; *Century Universal Enterprises, Inc. v. Triana Development Corp.* (1987), 158 Ill. App. 3d 182, 510 N.E.2d 1260; *Tan v. Boyke* (1987), 156 Ill. App. 3d 49, 508 N.E.2d 390; *Knox College v. Celotex Corp.* (1983), 117 Ill.

App. 3d 304, 453 N.E.2d 8; *Black, Jackson & Simmons Insurance Brokerage, Inc. v. International Business Machines Corp.* (1982), 109 Ill. App. 3d 132, 440 N.E.2d 282.) In all of these cases, the courts found that although the defendants' business involved the exchange of information as well as tangible products, the defendants were in the business of supplying tangible goods and the information provided was merely incidental. Alternatively, there are Illinois cases in which courts found that defendants such as banks, stockbrokers, real estate brokers, and termite inspectors are in the business of supplying information. *Richmond v. Blair* (1985), 142 Ill. App. 3d 251, 488 N.E.2d 563; *Perschall v. Raney* (1985), 137 Ill. App. 3d 978, 484 N.E.2d 1286; *Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267; *Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1979), 68 Ill. App. 3d 75, 385 N.E.2d 376; *Guaranty Bank & Trust Co. v. Reyna* (1964), 51 Ill. App. 2d 412, 201 N.E.2d 144.

In the cases of real estate brokers and termite inspectors it seems clear that their primary business is providing information, whether about the real estate market or the existence of termites. The more difficult cases to decide involve defendants whose business it is to provide both goods or services and information. Financial services such as those supplied by banks and stockbrokers present a more difficult problem because there is a thin line between an exchange of information about finances and actual financial transactions which would be classified as a good or service.

■ In the case before us, defendant's president, Mike Foster, testified that defendant was in the business of loaning money to customers and in the course of its business would supply credit information about defendant's customers to other financial institutions. Additionally, defendant was in the business of referring customers to other lending institutions and providing background information on those customers to the institutions, at least in the instance before us. There is no question plaintiff relied on the information provided by Burnett, then acting chairman of defendant, that a loan by plaintiff to DeVoe was a relatively safe venture. Burnett assured Travelstead that plaintiff would hold a first mortgage position on the real estate, that defendant would subordinate its own mortgage, and that Burnett was so sure of DeVoe's capacity to repay the loan that Burnett was willing to personally guarantee $10,000 of the $25,000 amount. Burnett testified that defendant would benefit from a loan to DeVoe because the loan would provide cash flow that would "get Utility back in operation." As stated earlier, Utility was in default on its $300,000 loan from defendant, and it is apparent that defendant hoped to recoup its

losses on that loan if DeVoe could turn it into a profitable operation. We find the situation before us meets the required elements of negligent misrepresentation as stated in *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 435 N.E.2d 443. Burnett, as agent of defendant, indicated to Travelstead, an agent of plaintiff, that defendant held a mortgage on property owned by DeVoe, when in fact the property was titled to Utility. Burnett further indicated that time was of the essence and it was imperative that the loan be disbursed in a matter of one or two days, assuring Travelstead that plaintiff was in a secure position to avoid loss. Then, based on incorrect information furnished by defendant, plaintiff disbursed emergency funds to DeVoe, securing it with a mortgage on property owned not by DeVoe, as indicated by Burnett, but instead owned by Utility, a company DeVoe was purportedly in the process of purchasing. The mortgage was not binding on DeVoe, he defaulted on the loan from plaintiff, and plaintiff had no collateral on which to foreclose. Burnett's information as to the ownership of the property subject to defendant's mortgage was incorrect, and Burnett clearly supplied it to guide plaintiff in making a decision to loan money to a third party. Defendant was in the business of supplying information since it routinely gave out credit information to other banks. It was in the business of trying to salvage a bad loan it made to Utility in this case, which resulted in plaintiff making an unsecured loan to DeVoe based on incorrect information. This case clearly falls into the class of cases in which the defendants were in the business of supplying information for the guidance of others in their business transactions with third parties. Therefore, the trial court correctly found defendant owed plaintiff a duty and that duty was breached.

We next address defendant's contention that the trial court erred by failing to consider plaintiff's negligence and to reduce plaintiff's award. As stated earlier, the trial court found plaintiff to be negligent in supervising the collection of the HITS funds assigned to plaintiff and reduced the judgment for plaintiff by $6,940. Defendant argues, however, that the trial court failed to consider adjusting the judgment to reflect plaintiff's negligence in originating the loan. Defendant further argues that plaintiff and its agents were negligent in failing to ascertain who held title to the mortgaged real estate before making the loan, despite the information supplied by defendant.

The trial court addressed the issue of plaintiff's contributory negligence when it found that plaintiff was negligent in collecting the HITS funds and reduced the judgment accordingly. We therefore do not accept defendant's assertion that the trial court ignored or failed

to address the issue of plaintiff's negligence in this case. The determination of whether plaintiff was contributorily negligent is ordinarily a factual issue to be decided by the trier of fact. (*Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267.) Unless it is established from the undisputed facts that all reasonable minds, in the exercise of fair and earnest judgment, will conclude that plaintiff was contributorily negligent, the trial court's finding will not be disturbed. (*Moran v. Aken* (1981), 93 Ill. App. 3d 774, 417 N.E.2d 846.) In the present case, the trial court was in the best position to weigh the conflicting testimony and assess the credibility of the witnesses. Therefore, we affirm the trial court's finding that plaintiff was not contributorily negligent in originating the loan to DeVoe in reliance on defendant's information.

For the foregoing reasons, the judgment of the circuit court of Perry County is affirmed.

Affirmed.

RARICK and WELCH, JJ., concur.