**ADVENT ELECTRONICS, INC., Plaintiff,**

v.

**Bernard A. BUCKMAN; and Bernard A. Buckman Enterprises, Inc., Defendants.**

**No. 95 C 305.**

United States District Court, N.D. Illinois, Eastern Division.

March 19, 1996.

Robert M. Kluchin, Stacey Lee Prange, Keck, Mahin & Cate, Chicago, IL, for Advent Electronics, Inc.

James B. Herd, Deeba Sauter Herd, St. Louis, MO, Charles Edward Antonietti, Calumet City, IL, for Bernard A. Buckman.

James B. Herd, St. Louis, MO, Charles Edward Antonietti, Calumet City, IL, for Bernard A. Buckman Enterprises, Inc.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff Advent Electronics brings this diversity action against Defendants Bernard Buckman and Bernard A. Buckman Enterprises, alleging that the defendants violated covenants in which they agreed not to compete against Advent Electronics. Pursuant to Federal Rule of Civil Procedure 15(a), the defendants now move for leave to amend their answer and counterclaim, and to add a jury demand. For the reasons set forth below, we grant leave to amend the answer, but strike the jury demand as untimely and deny leave to amend the counterclaim as futile.

### I. Background

In 1993, Advent Electronics, an electronic components distributor, agreed to buy Finnigan Electronics, another distributor. Finnigan Electronics (now known as Bernard A. Buckman Enterprises) and Advent Electronics executed an Asset Purchase Agreement dated November 8, 1993. Proposed Countercl., Ex. A. Concomitant with the Purchase Agreement, Advent Electronics and Finnigan's president and owner, Bernard Buckman, entered into an Employment Agreement appointing Buckman as the general manager of Advent Electronics' Missouri Branch Office. Id., Ex. B. The Employment Agreement also prohibited Buckman from competing against Advent Electronics for two years after termination of employment.

By late 1994, Advent Electronics and Buckman's relationship had deteriorated, and Buckman's employment was terminated. According to the plaintiff, the Employment Agreement authorized termination of Buckman's employment if he failed to meet specified sales and profits goals; Advent Electronics maintains that Buckman failed to reach those goals. In January 1995, Advent Electronics sued Buckman and Buckman Enterprises, claiming that the defendants were violating the Employment Agreement's covenants not to compete. After the plaintiff successfully sought a preliminary injunction,[1] the defendants sought leave to amend their answer and counterclaim. We discuss the proposed amendments in turn.

## II. Discussion

### A. Leave to Amend Answer

In its original answer, Buckman alleged as an affirmative defense that Advent had "systematically and intentionally breached its contracts and agreements with the [d]efendants." Answer ¶ 36(B). The answer alleged several acts, some more general than others, that allegedly constituted Advent's breach of the agreements between the parties. *Id.* ¶ 36(B)(1)–(7). Generally, Advent allegedly "restricted and undermined Bernard A. Buckman's authority as General Manager of Plaintiff's Missouri Branch Office and systematically removed [Buckman's] power to direct, supervise, and manage the business and affairs" of the office. *Id.* ¶ 36(B)(1). Specifically, Advent demoted Buckman to salesperson on August 1, 1994; announced the demotion prior to that date; forced the Missouri office to use a computer system without adequate training; refused to permit Buckman to hire replacement employees; and failed to pay Buckman commissions and bonuses due under the Employment Agreement. *Id.* ¶ 36(B)(2)–(7).

In the proposed answer, Buckman seeks to modify some of the specific acts alleged in support of the affirmative defense that Advent breached its agreements with Buckman and in support of the more general assertion

that Advent undermined Buckman's authority to manage the Missouri office. For example, the amended answer alleges that Advent not only refused to permit Buckman to hire sales employees, but also forced Buckman to retain inadequate salesmen. Amended Answer ¶ 36(B)(5). Furthermore, the amended answer adds that Advent limited the customers and geographic area from which Buckman could solicit sales, *id.* ¶ 36(B)(6)–(7), and restates Buckman's complaint about his demotion as a material amendment to the Employment Agreement, *id.* ¶ 36(B)(8).

In determining whether to grant leave to amend a pleading, Federal Rule of Civil Procedure 15(a) mandates that "leave shall be freely given when justice so requires." In the instant action, Advent fails to articulate how amending the answer would impose any unfair prejudice upon the plaintiff; indeed, the plaintiff argues that the amended answer raises no new issues. Moreover, although the amended answer adds allegations that do not constitute newly discovered facts, the defendants moved to amend their answer nearly three months prior to the close of discovery. Such a delay, though not encouraged, does not justify denying leave to amend. *See Tamari v. Bache & Co. (Lebanon) S.A.L.,* 838 F.2d 904, 909 (7th Cir.1988). Accordingly, we grant leave to amend the answer.

But Buckman's jury demand is untimely. Under Rule 38, a jury trial demand on any issue should be made "not later than 10 days after the service of the last pleading directed to such issue." Fed.R.Civ.P. 38(b). However, "[i]t is well-settled law that 'under Rule 38[,] amendments or supplemental pleadings do not extend the time for making demand for jury trial except as to new issues raised by the new pleadings.'" *Communications Maintenance, Inc. v. Motorola, Inc.,* 761 F.2d 1202, 1208 (7th Cir.1985) (quoting *Connecticut General Life Ins. Co. v. Breslin,* 332 F.2d 928, 931 (5th Cir.1964)). If the amended pleadings "cease raising new factual issues, and begin simply alleging new legal theories or particularized facts," then the

---

1. The defendants have appealed the preliminary injunction, but we retain jurisdiction to decide the instant motion because it does not affect the preliminary injunction or the pending appeal. *Chrysler Corp. v. International Union, Allied Indus. Workers,* 909 F.2d 248, 250 (7th Cir.1990).

amendments do not revive the time to make a jury demand under Rule 38. *Id.* In this action, Buckman had already failed to make a jury demand with respect to the issues raised in the original answer, including the allegations that Advent had breached its agreement with Buckman and had undermined Buckman's authority to manage the office. The amended answer merely adds "particularized facts," rather than new factual issues, and thus cannot revive the waived right to a jury. Accordingly, Buckman's jury demand is untimely.

### B. Leave to Amend Counterclaim

■ We now turn to Buckman's proposed counterclaim, which amends the original counterclaim by adding two new counts, Count II for fraud and Count III for negligent misrepresentation. Although leave to amend is freely granted, we need not grant leave to file futile amendments. "[A]n amendment may be futile when it fails to state a valid theory of liability, or could not withstand a motion to dismiss." *Bower v. Jones,* 978 F.2d 1004, 1008 (7th Cir.1992) (citations omitted). As we explain below, both proposed counts are futile, and we thus deny leave to amend the counterclaim.

### 1. Count II—Fraud

In Count II of the amended counterclaim, Buckman alleges that Advent's president, Victor Blair, made oral representations during contract negotiations that constituted fraud. Specifically, Blair represented that

> Advent Electronics, Inc. would produce gross sales of at least $1,300,000.00 and as much as $1,500,000.00 yearly in the State of Missouri during each of the four years of the Employment Agreement ... over, above, and in addition to the yearly gross sales ... which Finnigan Electronics had theretofore achieved on a yearly basis and further represented that Advent Electronics, Inc. would guaranty such additional sales if Finnigan sold its assets to Advent Electronics, Inc. and Defendant Bernard A. Buckman entered into the Employment Agreement.

Amended Countercl., Count II ¶ 4. In addition to the prediction of future sales and the promise of guaranteeing such sales, Buckman also argues that Advent promised to act in accordance with the Employment Agreement, but never had any intention of fulfilling those promises.

■ However, under Illinois law, representations such as these—the first forecasting future sales, the second promising future conduct—cannot generally form the basis of a fraud claim. First, " 'although representations as to the past income of a business are actionable, representations as to future income are not.' " *Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1299 (7th Cir.1993) (alteration added) (quoting *Niemoth v. Kohls,* 171 Ill.App.3d 54, 121 Ill.Dec. 37, 44, 524 N.E.2d 1085, 1094 *appeal denied,* 122 Ill.2d 578, 125 Ill.Dec. 222, 530 N.E.2d 250 (1988)). This specific rule flows from the general requirement that a misrepresentation of *fact* constitute the premise of a fraud action. *Id.* at 1298. Accordingly, the amended counterclaim's allegations concerning Blair's prognostications of future sales fail to state a fraud claim.

■ Second, promises to perform future conduct generally do not constitute fraudulent misrepresentations. *Industrial Specialty Chemicals, Inc. v. Cummins Engine Co.,* 902 F.Supp. 805, 813 (N.D.Ill.1995) (citing *HPI Health Care v. Mt. Vernon Hosp., Inc.,* 131 Ill.2d 145, 137 Ill.Dec. 19, 29, 545 N.E.2d 672, 682 (1989)). However, the general rule against the viability of "promissory fraud" is subject to an exception " 'where the false promise or representation of intention of future conduct is the scheme or device to accomplish the fraud.' " *Bower v. Jones,* 978 F.2d 1004, 1011 (7th Cir.1992) (quoting *Steinberg v. Chicago Medical Sch.,* 69 Ill.2d 320, 13 Ill.Dec. 699, 706, 371 N.E.2d 634, 641 (1977)). Specifically, the "scheme exception" applies where the party promises performance in order to induce the other party's reliance, and the other party so relies, but the promisor never intended to keep the promise. *Id.* This "broad" exception is itself, however, tempered by pleading and proof hurdles under Illinois law. *Id.* At the pleading stage,

> a claimant must be able to point to specific, objective manifestations of fraudulent in-

tent—a scheme or device. If he cannot, it is in effect presumed that he cannot prove facts at trial entitling him to relief. If the rule were otherwise, anyone with a breach of contract claim could open the door to tort damages by alleging that the promises broken were never intended to be performed. Presumably, it is this result that the Illinois rule seeks to avoid.

*Id.* at 1012 (quoting *Hollymatic Corp. v. Holly Sys.,* 620 F.Supp. 1366, 1369 (N.D.Ill. 1985).

■■■ Buckman fails to point to "specific, objective manifestations" showing that Advent never intended to keep the alleged guaranty of future sales and the promises made in the Employment Agreement. Although Buckman argues that the promises were broken, such evidence is insufficient by itself to support a promissory fraud claim. *Industrial Specialty Chemicals,* 902 F.Supp. at 813 (citing *Bower,* 978 F.2d at 1012). In addition, while it is true that the amended counterclaim broadly alleges that Advent restricted Buckman's authority as general manager "[i]mmediately" after entering the agreements, Amended Countercl., Count I ¶ 11(A), the specific allegations detailing the restriction contradict or do not support the allegation of immediacy, *see id.* ¶ 11(B)–(H). Absent allegations based on specific, objective evidence that Advent never intended to keep the promises, Buckman's amended counterclaim fails to state a promissory fraud claim. Thus, we deny leave to file Count II due to futility.[2]

**2.** To the extent Buckman argues that Blair's predictions concerning future sales constitutes a type of promissory fraud subject to the scheme exception, we reject such a characterization in this case. Predictions of future sales, where not based on fraudulent misrepresentations of preexisting or present facts, does not readily fit within the concept of promissory fraud. Promissory fraud more precisely applies to persons who never had the present intent to perform future conduct, *see Barrington Press, Inc. v. Morey,* 752 F.2d 307, 310 n. 1 (7th Cir.1985), rather than to persons who predict future sales; unless the claimant argues that a prediction of future sales implies a promise to make a good faith effort to reach those sales, the prediction does not at all involve a promise that the prognosticator will perform future conduct. In any event, Buckman fails to point to any specific, objective evidence that Blair never intended to reach those sales

## 2. *Count III—Negligent Misrepresentation*

■■■ In Count III of the amended counterclaim, Buckman alleges that Blair's predictions concerning future sales were negligent misrepresentations. However, recovery for purely economic loss due to a negligent misrepresentation is limited to those defendants who are " 'in the business of supplying information for the guidance of others in their business transactions.' " *Rankow v. First Chicago Corp.,* 870 F.2d 356, 362 (7th Cir.1989) (quoting *Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 755, 435 N.E.2d 443, 452 (1982)).[3] In order to meet the "in the business of supplying information" requirement, the alleged wrongdoer must supply the information in the course of business and the information must be supplied to guide others in their business transactions with *third* parties. *Id.* at 362–63 (citing *Black, Jackson and Simmons Ins. Brokerage v. IBM Corp.,* 109 Ill.App.3d 132, 64 Ill.Dec. 730, 732, 440 N.E.2d 282, 284 (1982)); *see also General Elec. Capital v. Equifax Servs.,* 797 F.Supp. 1432, 1442 (N.D.Ill.1992); *DuQuoin State Bank v. Norris City State Bank,* 230 Ill.App.3d 177, 172 Ill.Dec. 317, 320–21, 595 N.E.2d 678, 681–82 (1992).[4]

■■■ Count III of the amended counterclaim fails to allege that Advent was in the business of supplying information and that any information supplied by Advent was for Buckman's use in dealing with third parties.

goals, and thus the scheme exception is inapplicable.

**3.** We note that the Illinois Supreme Court has yet to speak definitively on the scope of negligent misrepresentation claims. *See Board of Ed. of City of Chicago v. A, C, and S, Inc.,* 131 Ill.2d 428, 137 Ill.Dec. 635, 647, 546 N.E.2d 580, 592 (1989).

**4.** To the extent that Buckman relies on the broader scope of negligent misrepresentation suggested by *Restatement (2d) of Torts* § 552(1), we decline to expand the scope; recovery of economic loss is itself a narrow exception to the general bar against recovery of purely economic losses on a tort theory, *see Rankow,* 870 F.2d at 363; *Gerdes v. John Hancock Mut. Life Ins. Co.,* 712 F.Supp. 692, 697 (N.D.Ill.1989).

From the answer and amended counterclaim, it is plain that Buckman does not allege that Advent is in the information-supplying business; Advent distributes electrical components, and any information-supplying is incidental to the business. *See DuQuoin State Bank,* 172 Ill.Dec. at 320–21, 595 N.E.2d at 681–82.[5] Nor does the amended counterclaim hint that Advent's representations were meant for Buckman's dealing with third parties. Accordingly, Count III fails to state a claim and we deny leave to file the amended counterclaim as futile.[6]

### III. Conclusion

For the reasons set forth above, we grant the defendants leave to amend their answer, strike the defendants' jury demand as untimely, and deny the defendants leave to amend their counterclaim. It is so ordered.

**5.** We point out that the defendants may again seek leave to file an amended counterclaim if they could allege, consistently with Illinois law and with their obligations to the court, facts that show Advent is indeed an information supplier.

**6.** We note that the proposed negligent misrepresentation claim also seemingly fails to allege a misrepresentation of fact, a requirement of negligent, as well as intentional, misrepresentation claims. *See Tim Thompson, Inc. v. Village of Hinsdale,* 247 Ill.App.3d 863, 187 Ill.Dec. 506, 525–26, 617 N.E.2d 1227, 1246–47 *appeal denied,* 152 Ill.2d 581, 190 Ill.Dec. 912, 622 N.E.2d 1229 (1993).