777 N.E.2d 603 (2002)
334 Ill. App.3d 90
267 Ill.Dec. 800
FOX ASSOCIATES, INC., Plaintiff-Appellant,
v.
ROBERT HALF INTERNATIONAL, INC., Defendant-Appellee.
No. 1-01-2187.
Appellate Court of Illinois, First District, Second Division.
September 24, 2002.
*604 Kelly, Olson, Michod, DeHaan & Richter (Richard H. Ferri, of counsel), Chicago, for Plaintiff-Appellant.
*605 Fred A. Smith and Melanie M. Brown, Sedgwick, Detert, Moran & Arnold, Chicago, for Defendant-Appellee.
Presiding Justice McBRIDE delivered the opinion of the court:
The primary issue on appeal is whether the negligent misrepresentation exception to the economic loss doctrine stated in Moorman Manufacturing Co. v. National Tank Co., 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982), applies to an employment agency, defendant Robert Half International, Inc. (Robert Half), for losses suffered by its client, plaintiff Fox Associates, Inc. (Fox), resulting from acts of an employee Fox hired through Robert Half.
The relevant facts are as follows. In early 1998, Fox, a magazine advertising agency, contacted the "accountemps" division of Robert Half, seeking a temporary bookkeeper.
In March 1998, bookkeeper T'Challa Ross (Ross) completed an "accountemps" employment application form which included the question, "Have you ever been convicted of a felony, convicted of a misdemeanor involving dishonesty or moral turpitude or been convicted in a military court martial?" Ross answered "No," despite having been convicted of embezzling $190,000 from an employer. It is unclear from the record where this conviction occurred; however, in Illinois, theft of property exceeding $100,000 in value is a Class 1 felony. 720 ILCS 5/16-1 (West 1998). Ross also provided the names of two references.
Robert Half contacted both references. The first reference, who supervised Ross while Ross worked as a corporate accountant between December 1995 and February 1998, described her as an "honest, trustworthy employee who we may rehire in the future," and the second reference stated that Ross's "overall quality [was] very good, [she was] honest."
Robert Half informed Fox that Ross was available for a temporary bookkeeping assignment and indicated that her references had described her as honest and trustworthy.
Ross began her temporary assignment at Fox on March 27, 1998. A written agreement between the parties provided in relevant part:
"Our employee is being assigned to you under the following Conditions of Agreement:The person assigned is an employee of accountemps and shall not be deemed to be your employee. * * *
* * *
An accountemps employee may not handle cash, negotiables or other valuables without the written consent of accountemps and then only under your direct supervision.
* * *
After you evaluate the performance and potential of our employee, you may wish to employ this person directly. Our employees represent our inventory of skilled professionals and in the event you wish [Ross] converted to your employ * * *, you agree to pay a conversion fee [of $6,600]."
On April 27, 1998, Fox hired Ross as its primary bookkeeper. In accordance with the parties' written agreement, Fox paid Robert Half $3,031 for Ross's temporary help and the $6,600 conversion fee described above.
Between October 22, 1998, and September 27, 1999, Ross took blank Fox checks, forged the necessary signatures, and embezzled $70,688 before Fox discovered the losses. Fox fired Ross on October 1, 1999, *606 but Fox was able to recover only $7,723. Fox also learned of Ross's embezzlement conviction.
Fox then filed the instant suit, asserting theories of negligence and negligent misrepresentation. Fox sought recovery of the fees it had paid Robert Half, consisting of $3,031 for the bookkeeper's temporary services and the $6,660 permanent placement fee, and the balance of the embezzled funds, $62,965. The trial court granted Robert Half's motion to dismiss under section 2-619 of the Code of Civil Procedure (735 ILCS 6/2-619(a)(9) (West 1998)), with prejudice, on the ground that the economic loss doctrine does not permit recovery of purely economic losses in a tort action (Moorman, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443). The trial court also indicated that Fox had not factually pled a duty to investigate Ross's background. Fox appeals, arguing that the trial court's conclusions are erroneous. According to its notice of appeal, Fox is seeking reinstatement of its negligent misrepresentation claim only and is not appealing the dismissal of its negligence claim.
A motion to dismiss under section 2-619 is a means of disposing of issues of law and easily proved issues of fact at the outset of a case. Tolan & Son, Inc. v. KLLM Architects, Inc., 308 Ill.App.3d 18, 24, 241 Ill.Dec. 427, 719 N.E.2d 288 (1999). The trial court must construe the motion and supporting documents in the light most favorable to the plaintiff. Tolan & Son, 308 Ill.App.3d at 24, 241 Ill.Dec. 427, 719 N.E.2d 288. Well-pled facts in the complaint are admitted, but conclusions of law and fact unsupported by specific allegations are not. Tolan & Son, 308 Ill.App.3d at 24, 241 Ill.Dec. 427, 719 N.E.2d 288. On appeal, the question is whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal was proper as a matter of law. Tolan & Son, 308 Ill.App.3d at 24, 241 Ill.Dec. 427, 719 N.E.2d 288. We review the trial court's decision de novo. Tolan & Son, 308 Ill.App.3d at 24, 241 Ill.Dec. 427, 719 N.E.2d 288.
In Moorman, the supreme court adopted the economic loss doctrine, indicating that when a defect in a product is qualitative in nature and relates to a consumer's expectation that the product is of a particular quality, resulting in economic loss but no personal injury or property damage, the consumer's remedy lies in contract, not in tort. Moorman, 91 Ill.2d at 88, 61 Ill.Dec. 746, 435 N.E.2d 443. The Moorman doctrine bars tort recovery for purely economic losses even when the plaintiff has no contract remedy. Anderson Electric, Inc. v. Ledbetter Erection Corp., 115 Ill.2d 146, 153, 104 Ill.Dec. 689, 503 N.E.2d 246 (1986). The Moorman doctrine applies to products and services. See, e.g., Tolan & Son, 308 Ill. App.3d 18, 241 Ill.Dec. 427, 719 N.E.2d 288 (applying Moorman doctrine to services of architect and engineer).
Economic loss is recoverable, however, "where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." Moorman, 91 Ill.2d at 88-89, 61 Ill.Dec. 746, 435 N.E.2d 443. A negligent misrepresentation consists of: (1) a false statement of material fact, (2) carelessness or negligence in ascertaining the truth of the statement by the party making it, (3) an intention to induce the other party to act, (4) action by the other party in reliance on the truth of the statement, and (5) damage to the other party resulting from such reliance, (6) when the party making the statement is under a duty to communicate accurate information. (See M. Polelle & B. Ottley, Illinois Tort Law § 14.02[5][b] *607 (2001)); Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor, 295 Ill. App.3d 567, 572-74, 229 Ill.Dec. 823, 692 N.E.2d 812 (1998). This exception does not apply when the information "supplied is merely ancillary to the sale [of a product or service] or in connection with the sale." Fireman's Fund Insurance Co. v. SEC Donohue, Inc., 176 Ill.2d 160, 168, 223 Ill.Dec. 424, 679 N.E.2d 1197 (1997).
The negligent misrepresentation exception has been applied to pure information providers such as accountants (Congregation of the Passion, Holy Cross Province v. Touche Ross & Co., 159 Ill.2d 137, 201 Ill.Dec. 71, 636 N.E.2d 503 (1994)); a bank providing credit information to a potential lender (DuQuoin State Bank v. Norris City State Bank, 230 Ill.App.3d 177, 172 Ill.Dec. 317, 595 N.E.2d 678 (1992)); aircraft, inventory and termite inspectors Haimberg v. R & M Aviation, Nos. 99-3554, 99-3673 Cons., 2001 WL 259173 (7th Cir. March 13, 2001) (prepurchase aircraft inspector); General Electric Capital Corp. v. Equifax Services, Inc., 797 F.Supp. 1432 (N.D.Ill.1992) (prepurchase inventory inspector); Perschall v. Raney, 137 Ill. App.3d 978, 92 Ill.Dec. 431, 484 N.E.2d 1286 (1985) (termite inspector)); a title insurer (Notaro Homes, Inc. v. Chicago Title Insurance Co., 309 Ill.App.3d 246, 257, 242 Ill.Dec. 719, 722 N.E.2d 208 (1999)); real estate brokers (Duhl v. Nash Realty, Inc., 102 Ill.App.3d 483, 57 Ill.Dec. 904, 429 N.E.2d 1267 (1981); Menard, Inc. v. U.S. Equities Development, Inc., No. 01 C 7142, 2002 WL 314571 (N.D.Ill. February 28, 2002)) (mem.op.); and stockbrokers (Penrod v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 68 Ill.App.3d 75, 24 Ill.Dec. 464, 385 N.E.2d 376 (1979)).
In these cases, the product was purely informationthe consumer received analytical work rather than a tangible product. "In other words, the end product [was] the ideas, not the documents or other objects into which the ideas [were] incorporated." Tolan & Son, 308 Ill.App.3d at 29, 241 Ill.Dec. 427, 719 N.E.2d 288, citing Congregation of the Passion, 159 Ill.2d at 163, 201 Ill.Dec. 71, 636 N.E.2d 503. "[S]upplying information need not encompass the enterprise's entire undertaking [for the defendant to fall within the information provider exception,] but [information] must be central to the business transaction between the parties." Tolan & Son, 308 Ill.App.3d at 29, 241 Ill.Dec. 427, 719 N.E.2d 288, citing General Electric Capital, 797 F.Supp. at 1443.
In contrast, when the information offered by the defendant relates to the defendant's tangible goods and/or noninformational goods or services, the information is considered merely ancillary or incidental, and the defendant is not deemed to be in the business of providing information and is not liable for negligent misrepresentation. Tolan & Son, 308 Ill.App.3d at 29, 241 Ill.Dec. 427, 719 N.E.2d 288, citing General Electric Capital Corp., 797 F.Supp. at 1442.
Examples of defendants in this category include manufacturers and sellers of tangible goods such as computers and construction materials (Black, Jackson & Simmons Insurance Brokerage, Inc. v. International Business Machines Corp., 109 Ill.App.3d 132, 64 Ill.Dec. 730, 440 N.E.2d 282 (1982) (manufacturers and sellers of computers and software)), overruled in part on other grounds, Fireman's Fund Insurance Co. v. SEC Donohue, Inc., 176 Ill.2d 160, 166, 223 Ill.Dec. 424, 679 N.E.2d 1197 (1997); Knox College v. Celotex Corp., 117 Ill. App.3d 304, 72 Ill.Dec. 703, 453 N.E.2d 8 (1983) (manufacturers and sellers of roofing materials); (Anderson Electric, Inc. v. Ledbetter Erection Corp., 115 Ill.2d 146, 104 Ill.Dec. 689, 503 N.E.2d 246 (1986) (manufacturers of electrical devices); Menard, *608 Inc. v. U.S. Equities Development, Inc., No. 01 C 7142 (N.D.Ill. February 28, 2002) (mem.op.) (construction supply firm)).
An additional example includes an architect and engineer retained to design and build townhomes who did not advise their client that the site's soil was highly compressible and could not support the buildings' foundations. Tolan & Son, 308 Ill. App.3d at 31, 241 Ill.Dec. 427, 719 N.E.2d 288.
Fox is arguing that Robert Half falls between these two extremes (the extremes of the pure information provider, and the tangible goods or noninformational goods or services provider), into a category of businesses providing both information, and tangible goods or noninformational goods or services. Tolan & Son, 308 Ill.App.3d at 29, 241 Ill.Dec. 427, 719 N.E.2d 288. Robert Half contends that the trial judge correctly determined that the employment agency was providing only a tangible product, an employee, not information.
To state a claim based on the negligent misrepresentation exception to Moorman, the plaintiff must allege: (1) the defendant is in the business of supplying information for the guidance of others in their business dealings; (2) the defendant provided information that constituted a misrepresentation; and (3) the defendant supplied the information for guidance in the plaintiff's business dealings. Tolan & Son, 308 Ill.App.3d at 27, 241 Ill.Dec. 427, 719 N.E.2d 288.
The allegation that a defendant is in the business of providing information for the guidance of others is a legal conclusion that must be supported by well-pled factual allegations. Tolan & Son, 308 Ill. App.3d at 28, 241 Ill.Dec. 427, 719 N.E.2d 288. To determine whether a party is in the business of supplying information, the precise facts of the specific case must be analyzed. Tolan & Son, 308 Ill.App.3d at 27, 241 Ill.Dec. 427, 719 N.E.2d 288. The determination is dependent upon the nature of the information at issue and its relation to the kind of business being conducted. Tolan & Son, 308 Ill.App.3d at 28, 241 Ill.Dec. 427, 719 N.E.2d 288. "`The critical question * * * is whether the information is an important part of the product offered. [A] business[ ] will be deemed to be in the business of supplying information if the information furnished along with the non-informational goods or services is central to the business transaction. [Citation.]'" Tolan & Son, 308 Ill. App.3d at 29, 241 Ill.Dec. 427, 719 N.E.2d 288.
Applying these principles to the instant case, we conclude that Fox failed to allege that Robert Half is in the business of supplying information for the guidance of others in their business dealings. Fox alleged that Robert Half is an employment agency that Fox contacted when it needed a competent temporary bookkeeper.
Fox argues that as an employment agency, Robert Half "supplies its client-companies, such as Fox, with information in that it screens individuals and places those individuals it determines as qualified with clients." We think it is apparent, however, that screening candidates and determining their employment qualifications does not convey any information to the employment agency's clients for guidance in the clients' business transactions. Placing individuals with clients could supply clients with information, but Fox's own allegations indicate that providing information was not "central to the [parties'] business transaction." Tolan & Son, 308 Ill.App.3d at 29, 241 Ill.Dec. 427, 719 N.E.2d 288. Fox did not ask the employment agency to prepare a report analyzing Ross's credentials and suitability for a position with Fox. Compare, General Electric Capital Corp., 797 *609 F.Supp. at 1432 (where client contemplating purchase of car dealership hired company to inspect and prepare inventory report); Haimberg, Nos. 99-3554, 99-3673, Cons.(7th Cir. March 13, 2001) (where client contemplating purchase of used aircraft hired individual to inspect and prepare quality report); Tribune Co. v. Geraghty & Miller, Inc., No. 97 C 1889, 1997 WL 438836 (N.D.Ill. July 25, 1997) (mem. op.) (where client contemplating purchase of building hired company to conduct environmental site assessment and prepare written report). Rather, as Fox alleged, it contacted Robert Half "for the purpose of employing an individual to provide competent bookkeeping services." Fox now emphasizes this allegation, arguing that it "asked [Robert Half] to provide it with an individual qualified to perform accounting and bookkeeping duties."
Based on Fox's own contentions, we conclude that the purpose of the parties' relationship was for Robert Half to supply a skilled individual and that any information that Robert Half allegedly supplied was "merely ancillary to the sale of a product or service or in connection with the sale." Tolan & Son, 308 Ill.App.3d at 28, 241 Ill.Dec. 427, 719 N.E.2d 288. The ultimate result of this relationship was a tangible product, a skilled person, not intangible analysis or ideas. Robert Half was not in the business of supplying information within the meaning of the exception to the Moorman doctrine. Tolan & Son, 308 Ill.App.3d at 28-31, 241 Ill.Dec. 427, 719 N.E.2d 288 (architect and engineer were retained to build tangible objects, townhomes, and thus, information provided during construction about cause of foundation cracks was incidental).
Furthermore, Fox failed to adequately allege a negligent misrepresentation occurred. The elements of a negligent misrepresentation include a duty to communicate accurate information. However, Fox did not allege facts and has not cited authority indicating that Robert Half was under a duty to initiate a criminal background check of its prospective employee. "Negligent misrepresentation involves a breach of the duty to use due care in obtaining and communicating information upon which others may reasonably be expected to rely in the conduct of their economic affairs." Stewart v. Thrasher, 242 Ill.App.3d 10, 14, 182 Ill.Dec. 930, 610 N.E.2d 799 (1993). In Evans v. Morsell, 284 Md. 160, 167, 395 A.2d 480, 484 (1978), a Maryland court rejected the contention that an employer is under a duty to inquire into a prospective employee's criminal record even where it is known that the employee is to regularly deal with members of the public. In Ponticas v. K.M.S. Investments, 331 N.W.2d 907, 913, (Minn. 1983), a Minnesota court indicated:
"If the employer has made adequate inquiry or otherwise has a reasonably sufficient basis to conclude the employee is reliable and fit for the job, no affirmative duty rests on him to investigate the possibility that the applicant has a criminal record. * * * Liability of an employer is not to be predicated solely on failure to investigate criminal history of an applicant, but rather, in the totality of the circumstances surrounding the hiring, whether the employer exercised reasonable care."
Here, Ross indicated that she did not have a criminal past, and two references, one of which appears to have been her most recent employer, indicated that Ross was honest and trustworthy. In light of these facts and the cases discussed above, we conclude that Fox failed to allege that the employment agency was under a duty to conduct a criminal background check.
Fox contends, however, that by asking Ross whether she had a criminal past, Robert Half voluntarily undertook a duty to discern and supply accurate information *610 about Ross's criminal past. Under the voluntary undertaking doctrine, one who gratuitously, or for consideration, renders services to another is subject to liability for bodily harm caused to the other by one's failure to exercise due care or such competence and skill as one possesses. Frye v. Medicare-Glaser Corp., 153 Ill.2d 26, 32, 178 Ill.Dec. 763, 605 N.E.2d 557 (1992). Fox did not allege that any bodily harm occurred as a result of its relationships with Robert Half or Ross, and it has not argued any reason for extending the voluntary undertaking doctrine to what is a purely economic loss.
Thus, we conclude that Fox failed to allege that its transaction with Robert Half is subject to Moorman's negligent misrepresentation exception, and that its allegations of a negligent misrepresentation were factually deficient. Accordingly, we affirm the order of the trial judge dismissing Fox's negligent misrepresentation claim with prejudice.
Affirmed.
CAHILL and BURKE, JJ., concur.