I concur in the majority opinion. I write separately to emphasize two points: (1) by our opinion today we not only make the economic loss rule sounder in principle and easier in application, but we also bring Florida more into line with the majority of jurisdictions that have adopted such a rule; and (2) our limitation of the rule will not open the gates to widespread tort recovery for purely economic losses. As the majority recognizes, plaintiffs whose cases fall outside of the economic loss rule must still prove "duty, breach, and proximate cause." Majority op. at 543. The "duty" prong remains a strong filter in these cases.
I discuss these concepts in turn.
 1. Simplification of Economic Loss Rule
The economic loss rule has become a confusing morass. As more than one court has lamented, the rule has been "stated with ease but applied with great difficulty." Delgado v. J.W. CourtesyPontiac GMC-Truck, Inc., 693 So.2d 602, 606 (Fla. 2d DCA 1997) (quoting Sandarac Ass'n v. W.R. Frizzell Architects, Inc.,609 So.2d 1349, 1352 (Fla. 2d DCA 1992)). We, too, have "acknowledge[d] that our prior pronouncements on the [economic loss] rule have not always been clear, and, accordingly, have been the subject of legitimate criticism and commentary."Moransais v. Heathman, 744 So.2d 973, 980 (Fla. 1999); seealso Comptech Int'l, Inc. v. Milam Commerce Park, Ltd.,753 So.2d 1219, 1223-24 (Fla. 1999) (recognizing "the confusion that has abounded in this area of the law"). Apparently due to this confusion, and because we have never applied the economic loss rule to a case involving both the provision of services and lack of privity, the Eleventh Circuit Court of Appeals in this case believed that no controlling precedent existed, and it certified several questions. I hope that our restriction of the rule will reduce some of the confusion.
The Court today limits the economic loss rule to situations "where the parties are either in contractual privity or the defendant is a manufacturer or distributor of a product, and no established exception to the application of the rule applies." Majority op. at 534. Stated negatively, the economic loss rule does not apply in the services context unless a contract exists and none of the established exceptions to the rule apply.[8]
I agree with this limitation of the rule. As the majority recognizes, the central purpose of the economic loss rule is "to protect the integrity of the contract," Majority op. at 538, and thereby to prevent contract law and warranty law from "drown[ing] in a sea of tort." East River S.S. Corp. v. TransamericaDelaval, Inc., 476 U.S. 858, 866, 106 S.Ct. 2295, 90 L.Ed.2d 865
(1986) (citing Grant Gilmore, The Death of Contract 87-94 (1974)). When parties can protect their economic interests through contract, it would only undermine contract and warranty law and *Page 545 
produce economic inefficiency to allow purely economic recovery in tort. See Alloway v. Gen. Marine Indus., L.P., 149 N.J. 620,695 A.2d 264, 275 (1997) ("[A] tort cause of action for economic loss duplicating the [causes of action] provided by the U.C.C. is superfluous and counterproductive."). It is doubtful, however, that parties can protect their economic interests through contract when they have not contracted with each other and when the basis of their indirect relationship is not a tangible product, but rather an intangible service. See Congregation ofthe Passion, Holy Cross Province v. Touche Ross Co.,159 Ill.2d 137, 201 Ill.Dec. 71, 636 N.E.2d 503, 515 (1994) ("The characteristics of a tangible object are readily ascertainable, and they can be memorialized in a contract and studied by the parties. . . . It is not necessary or generally possible to memorialize all the elements of [a service] contract. . . . Application of the [economic loss rule], therefore, is inappropriate where a relationship results in something intangible."). In such circumstances, the parties often lack a sufficient nexus through which to allocate economic risks. Indeed, they might not even know of their indirect relationship.
I note that restricting the rule's application does not place Florida at odds with other states. To the contrary, it places Florida squarely in the mainstream. The vast majority of states restrict the rule to products cases, at least in the absence of a contract. See, e.g., Ins. Co. of N. America v. Cease Elec.Inc., 688 N.W.2d 462, 472 (Wis. 2004) (holding as a "bright line rule" that "the economic loss doctrine is inapplicable to claims for the negligent provision of services"); Congregation of thePassion, 201 Ill.Dec. 71, 636 N.E.2d at 514 (stating that the economic loss rule applies to services relationships "only where the duty of the party performing the service is defined by the contract that he executes with his client"); McCarthy Well Co.v. St. Peter Creamery, Inc., 410 N.W.2d 312, 315 (Minn. 1987) (holding that the economic loss rule does not apply "if the predominant purpose of the contract is the rendition of services").[9] Few states apply the *Page 546 
rule as broadly to services rendered as to products purchased.See Ramerth v. Hart, 133 Idaho 194, 983 P.2d 848, 851 (1999) (applying the economic loss rule to the "repair and inspection" of an airplane despite the absence of privity, and stating that the rule "applies to negligence cases in general; its application is not restricted to products liability cases").[10]
Our simplification of the rule to cases involving either defective products or a contractual relationship places Florida in the mainstream of jurisdictions applying the economic loss rule.
 2. The Duty Element
Limiting the scope of the economic loss rule removes one obstacle to the recovery of purely economic losses. But significant obstacles remain. As the majority recognizes, plaintiffs whose cases fall outside of the economic loss rule must still satisfy "the traditional negligence principles of duty, breach, and proximate cause." Majority op. at 543. The "duty" prong remains a strong filter in these cases — virtually as strong as the rule itself. A service provider's mere failure to exercise reasonable care in performing a service contract does not render it liable in tort to every party who loses revenue or incurs additional expense. The plaintiff still must demonstrate an independent duty to protect that plaintiff's purely economic interests. See Onita Pac. Corp. v. Trs. of Bronson,315 Or. 149, 843 P.2d 890, 896 (1992) (holding that a "negligence claim for the recovery of economic losses caused by another must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm"). Such a showing will be difficult in most cases.
Illinois's experience is instructive. In Congregation of thePassion, 201 Ill.Dec. 71, 636 N.E.2d at 514, the Illinois Supreme Court did roughly what the majority does today: it limited the application of the economic loss rule in the services context to cases "where the duty of the party performing the service is defined by contract." *Page 547 Id. After Congregation of the Passion, however, Illinois courts quickly recognized that the "duty" element plays a filtering role similar to that of the economic loss rule. As one Illinois appellate court noted,
 "[T]he concept of duty is at the heart of the distinction drawn by the economic loss rule. The rule acts as a shorthand means of determining whether a plaintiff is suing for injuries arising from the breach of a contractual duty . . . or for injuries resulting from the breach of a duty arising independently of the contract . . ."
Tolan Son, Inc. v. KLLM Architects, Inc., 308 Ill.App.3d 18, 241 Ill.Dec. 427, 719 N.E.2d 288, 294 (1999) (quoting 2314Lincoln Park West Condo. Ass'n v. Mann, Gin, Ebel Frazier,Ltd., 136 Ill.2d 302, 144 Ill.Dec. 227, 555 N.E.2d 346, 351-52
(1990)). Thus, even without the economic loss rule, Illinois courts continue to deny relief to most plaintiffs seeking purely economic losses because they generally cannot prove a breach of a duty independent of the contract. See, e.g., Harger v. SpiritAirlines, Inc., No. 01-C-8606, 2003 WL 21218968, at *10 (N.D.Ill. May 22, 2003) (finding no independent duty on the part of an airline to transport passenger bags safely to their destination, because any such duty is merely "incidental" to the contract); Peter J. Hartmann Co. v. Capital Bank Trust Co.,296 Ill.App.3d 593, 230 Ill.Dec. 830, 694 N.E.2d 1108 (1998) (finding that any duties of a subcontractor to a property owner were merely "incidental to [the subcontractor's] contractual duty").
Courts have considered allowing recovery from service providers for purely economic loss where a special or fiduciary relationship exists. See, e.g., Mut. Serv. Cas. Ins. Co. v.Elizabeth State Bank, 265 F.3d 601 (7th Cir. 2001) (applying Illinois law) (concluding that a bank's handling of its customers' transactions might create independent tort duties);Choi v. Chase Manhattan Mortgage Co., 63 F.Supp.2d 874, 884
(N.D.Ill. 1999) (holding that independent tort duties might exist "where one party, due to a close relationship, relies heavily on the judgment of another").
The experience of Illinois suggests that our limitation of the economic loss rule in the services context will not open up a brave new world of tort liability because the duty element will continue to weed out most claims for purely economic loss. Even the strongest advocates of limiting the economic loss rule in Florida have recognized this. See Paul J. Schwiep, TheEconomic Loss Rule Outbreak: The Monster That Ate CommercialTorts, Fla. Bar J., Nov. 1995, at 34, 42 ("The duty-analysis, had it been employed [in this Court's previous] cases, may very well have led to the same final outcome [as the economic loss rule] — the facts aren't clear. The point of this article is not to criticize the result, but to urge rigor in the analysis.").
 CONCLUSION
The practical effect of today's decision in terms of overall tort liability should be unremarkable. Although the economic loss rule no longer applies in the services context in the absence of a contract, the duty element of traditional negligence claims should continue to filter out the undeserving claims previously barred by the economic loss rule. The Court does nothing to alter the underlying causes of action on which recovery for purely economic losses may be based. Majority op. at 543 ("[W]e express no opinion on the existence of a cause of action or the appropriateness *Page 548 
of recovery for certain types of economic damages in individual cases."). Rather, it merely ensures that deserving claims for purely economic recovery in tort — exceptional though they may be — will not be swallowed by an over-inclusive rule. Therefore, I concur.
WELLS, J., concurs.
[8] For example, our holding does not supplant the exception for professional services created in Moransais,744 So.2d at 983. Majority op. at 543.
[9] Many states implicitly restrict the rule to products liability cases. These include Alabama, see Lloyd Wood CoalCo. v. Clark Equip. Co., 543 So.2d 671, 673-74 (Ala. 1989) (stating that the rule applies to products liability cases involving manufacturers); California, see Jimenez v. Super.Court, 29 Cal.4th 473, 127 Cal.Rptr.2d 614, 58 P.3d 450, 456
(2002) (limiting the rule to cases involving "strict products liability . . . when a product defect causes damage" to the product itself); Delaware, see Danforth v. Acorn Structures,Inc., 608 A.2d 1194, 1198 (Del. 1992) (stating that the rule bars "the recovery of economic loss caused by qualitatively defective products"); Georgia, see Vulcan Materials Co. v.Driltech, Inc., 251 Ga. 383, 306 S.E.2d 253, 257 (1983) (stating that the rule applies "when a defective product has resulted in the loss of the value or use of the thing sold"); Hawaii, seeState ex rel. Bronster v. U.S. Steel Corp., 82 Hawai'i 32,919 P.2d 294, 302 (1996) (adopting the rule "insofar as it applies to claims for relief based on a product liability or negligent design and/or manufacture theory"); Maine, see Oceanside atPine Point Condo. Owners Ass'n v. Peachtree Doors, Inc.,659 A.2d 267, 270 (Me. 1995) (applying the rule to bar "recovery for a defective product's damage to itself"); Maryland, see Morrisv. Osmose Wood Preserving, 340 Md. 519, 667 A.2d 624, 632-33
(1995) (characterizing the rule as a products liability rule);Massachusetts, see Berish v. Bornstein, 437 Mass. 252,770 N.E.2d 961, 975 (2002) (holding that the rule applies "to the purchase and sale of products [and] also to claims of negligent design and installation in a newly constructed home");Michigan, see Neibarger v. Universal Coops., Inc.,439 Mich. 512, 486 N.W.2d 612, 615 (1992) (limiting the rule to "transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law"); Missouri, see Sharp Bros. Contracting Co. v.Am. Hoist Derrick Co., 703 S.W.2d 901, 903 (Mo. 1986) (applying the rule to cases "where the only damage is to the product sold"); Nebraska, see Nat'l Crane Corp. v. Ohio Steel Tube Co., 213 Neb. 782, 332 N.W.2d 39, 44 (1983) (holding that "the purchaser of a product pursuant to a contract cannot recover [purely] economic losses from the seller manufacturer on claims in tort based on negligent manufacture or strict liability");New Jersey, see Alloway, 695 A.2d at 267 (stating that the rule applies to "claims arising out of the manufacture, distribution, and sale of defective products"); New York, see532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.,96 N.Y.2d 280, 727 N.Y.S.2d 49, 750 N.E.2d 1097, 1101 n. 1 (2001) (stating that the rule applies to suits by "an end-purchaser of a product" against a manufacturer); North Carolina, see Moore v.Coachmen Indus., Inc., 129 N.C.App. 389, 499 S.E.2d 772, 780
(1998) (defining the rule in products liability terms); NorthDakota, see Hagert v. Hatton Commodities, Inc.,350 N.W.2d 591, 595 (N.D. 1984) (same); Oklahoma, see Okla. Gas Elec.Co. v. McGraw-Edison Co., 834 P.2d 980, 982 (Okla. 1992) (stating that the rule applies to "manufacturers' products liability"); South Carolina, see Beachwalk Villas Condo. Ass'nv. Martin, 305 S.C. 144, 406 S.E.2d 372, 374 n. 1 (1991) (stating that the rule applies only to product defect cases in which the "duties are created solely by contract"); and SouthDakota, see Diamond Surface, Inc. v. State Cement PlantComm'n, 583 N.W.2d 155, 161 (S.D. 1998) (stating that the rule applies when the "predominate purpose" of a transaction is the "sale of goods").
[10] See also Springfield Hydroelectric Co. v. Copp,172 Vt. 311, 779 A.2d 67, 71 (2001) (stating that "the economic loss rule clearly applies to commercial disputes outside the confines of product liability"); Neb. Innkeepers, Inc. v. Pittsburgh-DesMoines Corp., 345 N.W.2d 124, 126 (Iowa 1984) (stating broadly that "[t]he well-established general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable"). *Page 549